IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TYRICKA LAVON CALLOWAY,          :
AIS# 174732
                                 :
     Plaintiff,
                                 :  CIVIL ACTION 14-283-CG-M
vs.
                                 :
CYNTHIA STEWART, *et al.*,
                                 :
     Defendants.

<u>REPORT AND RECOMMENDATION</u>


Plaintiff, an Alabama prison inmate proceeding *pro se*
and *in forma pauperis*, filed an amended complaint under 42
U.S.C. § 1983.  (Doc. 6).  This action was referred to the
undersigned for appropriate action pursuant to 28 U.S.C. §
636(b)(1)(B) and Local Rule 72.2(c)(4).  After careful
review of the complaint, it is recommended that Plaintiff's
Complaint under § 1983 be dismissed without prejudice,
prior to service of process, pursuant to 28 U.S.C. §
1915(e)(2)(B)(ii).

**I.   Summary of Alleged Facts in Complaint**

This action is brought pursuant to 42 U.S.C. § 1983
alleging rights, privileges, or immunities guaranteed to
Plaintiff under the Constitution were violated due to the
conduct and actions of Defendants Stewart, Smith, Raybon,

Giles, Kim Thomas, Conway, Ed Paulk, Lynn, Goocher, Greene, Maclean, and Bentley.

While serving concurrent sentences for manslaughter and attempted murder (doc. 6 at 6) at Bullock Correctional Facility ("Bullock"), Plaintiff filed a lawsuit against prison officials, namely Warden Rene Mason, Warden Sandra Giles, Warden Kenneth Jones, and numerous correctional officers for, *inter alia*, failure to protect, conditions of confinement, disciplinary procedures, access to courts, and retaliation.[1] (See Case No.: 2:13:cv-00311-WHA-WC filed May 7, 2013 in the United States District Court for the Middle District of Alabama). Plaintiff was subsequently transferred to Fountain Correctional Facility ("Fountain") in April of 2014 and to J.O. Davis Correctional Facility ("J.O. Davis") on June 12, 2014. (Doc. 6 at 14, 17, 21). On June 15, 2014, Plaintiff filed this current lawsuit challenging his transfer to and conditions of imprisonment at Fountain and J.O. Davis. (Doc. 1). However, since the filing of this action, Plaintiff has been transferred to

---

[1] The claims in the § 1983 action filed in the Middle District of Alabama were dismissed prior to service of process on July 8, 2013, with the exception of Plaintiff's claim of retaliation and access to the courts, which is currently pending. (*See* Doc. 18, Case No.: 2:13:cv-00311-WHA-WC, filed in the U.S.D.C. for M.D. Ala.).

Loxley Work Release Center in Loxley, Alabama. (Doc. 11).
The allegations of Plaintiff's complaint are as follows:

**Count One:** Plaintiff alleges on June 2, 2014, while
housed at Fountain, Corporal Green allowed an
"unauthorized" inmate, known as "Scarface" to enter
Plaintiff's dormitory. (Doc. 6 at 11). Armed with two
prison-made knives, "Scarface" stabbed an inmate multiple
times. (*Id.*). Due to the size and proximity of the double
bunked beds used at Fountain to accommodate the large
prison population, Corporal Green was unable to visually
observe the attack or quickly locate the assailant or the
weapons used. (*Id.* at 12). Plaintiff claims the use of
the double bunked beds evidences overcrowdedness at the
prison and indicates deliberate indifference to his safety
on the part of Defendants Stewart, Raybon, Smith, Thomas,
and Bentley. (*Id.*).

**Count Two:** Plaintiff alleges the following living
conditions which he claims are unsafe.

1. Throughout his incarceration at J.O. Davis,
   Plaintiff alleges Defendants Stewart, Smith,
   Raybon, Goocher, Thomas, Lynn Bentley, and Paulk
   are liable for subjecting him to unsafe conditions
   due to inadequate or nonexistent fire safety
   equipment. (*Id.* at 14). Specifically, Plaintiff
   alleges the prison lacks smoke detectors,
   sufficient fire escapes, and sufficient fire
   extinguishing equipment, thereby, compromising his
   safety. (*Id.*).

2.   Defendants Stewart, Smith, Raybon, Goocher,
     Thomas, Lynn, and Bentley are allegedly
     responsible for subjecting Plaintiff to
     contaminated showers with "busted" shower floors,
     walls, and ceilings, as well as, standing water,
     and backed up sewage that expose Plaintiff to
     various infections, bacteria, and diseases. (*Id.*
     at 14-15).

3.   Plaintiff contends that as of November 1, 2013,
     Defendants Thomas and Bentley began reassigning
     HIV positive inmates throughout the state penal
     institutions. (*Id.* at 15). Plaintiff claims,
     however, that Defendants Stewart, Smith, Raybon,
     Goocher, Thomas, and Bentley failed to
     subsequently equip Fountain and J.O. Davis with
     "adequate cleaning supplies/detergents; bleach,
     etc., to aid in the prevention, of spreadable
     diseases, or infections in the living areas,
     [including the] cafeteria . . . [as there is no
     hot water to sanitize kitchen utensils]; showers;
     sinks; toilets; laundry; shared by those
     reassigned male HIV-positive inmates." (*Id.*).
     Plaintiff claims these "safety violations" equate
     to deliberate indifference to his health. (*Id.* at
     16).

4.   Additionally, Plaintiff claims Defendants Stewart,
     Smith, Raybon, Bentley, Thomas, Lynn, and Paulk
     created a substantial risk of harm to him by
     failing to repair a damaged overhead light fixture
     that contained exposed electrical wiring and was
     often susceptible to rainwater due to a leak in
     the roof. (*Id.*). Plaintiff further claims that
     his bed was contaminated with rust and lead paint
     which was peeling away from the metal frame.
     (Doc. 1 at 10).

**Count Three:**  Plaintiff asserts that the transfers

from Bullock to Fountain and J.O. Davis occurred during the

time that Plaintiff's Motion to Show Cause was pending

before the United States District Court for the Middle

4

District of Alabama.[2] (Doc. 6 at 17). It is Plaintiff's contention that he was subjected to a "warden-to-warden" transfer in retaliation for filing suit in the Middle District of Alabama and that the transfer was an effort by Defendants Stewart, Raybon, and Smith, who conspired with Defendants Conway, Maclean, and Thomas, to prevent or complicate his efforts to access the courts.[3] (*Id*.).

Furthermore, Plaintiff asserts he was denied a transfer to a minimum security facility on or about June 20, 2014, in retaliation for exercising his right to file suit against prison authorities. (*Id*. at 18). Plaintiff was anticipating a transfer from J.O. Davis to Decatur Honor Camp, a facility closer to his family in Huntsville,

---

[2] The docket sheet for Case No.: 13-cv-0311-WHA-WC indicates that Plaintiff's motion to show cause why Plaintiff was being denied access to the courts was filed on September 26, 2013 (Doc. 22). Defendants answered the motion on October 4, 2013 (doc. 7), and the motion was subsequently denied on October 8, 2013. (Doc. 28).

[3] Plaintiff's original complaint stated that on April 23, 2014, the day following his transfer from Bullock to Fountain, his mother contacted Bullock's Classification Specialist, Simone Parker, who informed Plaintiff's mother she was unaware of the transfer and did not recommend it. (Doc. 1 at 12). Parker allegedly confirmed that she instead had completed paperwork on her desk recommending a transfer closer to Plaintiff's family due to hardship. (*Id*. at 12-13). Plaintiff contends Parker instructed Plaintiff's mother to report the transfer to Cassandra Conway in the Central Office in Montgomery, Alabama. (*Id*. at 12). This allegation was not included in Plaintiff's amended complaint; therefore, the Court will not consider this allegation in its determination of Plaintiff's claim.

Alabama, which had been recommended by Defendant Warden
Raybon and J.O. Davis Classification Specialist Michael
Hoffman. (*Id*.). However, state officials on the Central
Review Board, Defendants Maclean and Greene, ultimately
denied the transfer reasoning "crime details" from
Plaintiff's conviction "indicate[d] a need for direct
supervision" and that Plaintiff's behavior while in prison
"was not conducive with [a lower security level
placement.]" (*Id*.). Plaintiff, conversely, argues he met
all the necessary criteria for such a transfer and asserts
the denial was due solely to his past litigation and
complaints against members of the Central Review Board.
(*Id*.). He bases this argument on the knowledge that his
codefendant, who is serving consecutive sentences for
greater offenses of murder and attempted murder, was
transferred to the honor camp two years prior. (*Id*. at
19). Plaintiff, consequently, alleges his transfers and
his denial for transfer were exclusively conducted for
retaliatory purposes and in attempt to deny him access to
the courts. (Doc. 6 at 21).

**Count Four**: Plaintiff asserts that J.O. Davis lacks
a physical law library and does not "provide legal
materials, forms, updates as required by law to aid in the
preparation of plaintiff's pending litigation in

state/federal court." (*Id.*).  It is Plaintiff's allegation that Defendants Stewart, Smith, Raybon, and Giles conducted an inmate "swap" to prevent him from filing future lawsuits, "as well as 'Special Reports' under the pending suit [he had] in the United States District Court for the Middle District [of Alabama]." (*Id.*).

## II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiff is proceeding *in forma pauperis*, the Court is reviewing his complaint (Doc. 1) under 28 U.S.C. § 1915(e)(2)(B).  Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).[4]  A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, *id.* at 327, or the claim seeks to enforce a right that clearly does not exist.  *Id.*

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).  To avoid dismissal for failure to

---

[4] The frivolity and the failure-to-state-a-claim analysis contained in *Neitzke v. Williams* was unaltered when Congress enacted 28 U.S.C. § 1915(e)(2)(B) in 1996.  *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir.), *cert. denied*, 534 U.S. 1044 (2001).  However, dismissal is now mandatory under § 1915(e)(2)(B).  *Id.* at 1348-49.

state a claim upon which relief can be granted, the allegations must show plausibility. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557 (second brackets in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones v. Bock,* 549 U.S. 199, 215 (2007).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court, however, does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an

action." *GJR Investments v. County of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott*, 610 F.3d 791, 710 (11th Cir. 2010) (relying on *Iqbal*, 566 U.S. 662).  Furthermore, the court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements.  *Iqbal*, 566 U.S. at 681.  In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

**III. DISCUSSION**

Plaintiff alleges in his complaint that Defendants violated his First, Eighth, and Fourteenth Amendment constitutional rights.  The Court will review each of his claims in turn.

**1. Declaratory and Injunctive Relief Sought is Moot.**

The claims of Count One and Count Two of Plaintiff's complaint relate solely to the conditions of confinement at Fountain and J.O. Davis.  During the pendency of this action, however, Plaintiff has been transferred to Loxley Work Center in Loxley, Alabama.  (*See* Doc. 11).  The transfer to Loxley Work Center moots Plaintiff's request for any injunction or declaratory relief.

The law is clear that in order for a plaintiff to have standing to sue, an actual controversy must exist at all times his case is pending. *Alvarez v. Smith*, 558 U.S. 87, 92 (2009); U.S. CONST. Art. III, § 2.   The Supreme Court has held:

> "The federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues 'concrete legal issues, presented in actual cases, not abstractions,' are requisite. This is as true of declaratory judgments as any other field." *United Public Workers of America v. Mitchell*, 330 U.S. 75, 89 (1947). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

*Golden v. Zwickler*, 394 U.S. 103, 108, 89 S. Ct. 956, 22 L. Ed. 2d 113 (1969). *See also*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)("Abstract injury is not enough.  The plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of

injury must be both "real and immediate," not "conjectural" or "hypothetical."). The Eleventh Circuit has described the standard as follows:

> Consistent with the "cases" and "controversies" requirement of Article III, the Declaratory Judgment Act, 28 U.S.C. § 2201, specifically provides that a declaratory judgment may be issued only in the case of an "actual controversy." *See Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985). Based on the facts alleged, there must be a substantial continuing controversy between two adverse parties. *Id*. at 1552. "The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id*. (internal quotations omitted).

> Thus, in order for this Court to have jurisdiction to issue a declaratory judgment, . . . [plaintiffs] must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future. *See Emory*, 756 F.2d at 1552. "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Id*.

*Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1347 (11th Cir. 1999). *See also, Castaneira v. Perdue*, 2010 U.S. Dist. LEXIS 130384, 2010 WL 5115193, *2 (N.D. Ga. December 09, 2010) ("The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments."),

quoting *Malowney*, 193 F.3d at 1347.  In the current action, Plaintiff has alleged no actual personal injury and has failed to establish, or even assert, that he is likely to be injured in the future.  Declaratory relief is, therefore, unavailable to Plaintiff, as he is no longer incarcerated at Fountain or J.O. Davis.

The same standard applies to moot Plaintiff's claim for injunctive relief.  The law is settled that a § 1983 action filed by a prisoner seeking injunctive relief becomes moot one he is transferred or released from the facility where the cause of action arose.  *See Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (Plaintiff "was transferred to another facility shortly after his complaint was filed. . . . At that point, his claims for injunctive and declaratory relief relating to the conditions of his administrative segregation at the West Jefferson facility no longer presented a case or controversy.).  Additionally, there is no evidence that Plaintiff will be returning to either Fountain or J.O. Davis; therefore, there is no evidence of "any continuing, present injury or real and immediate threat of repeated injury" to Plaintiff from these Defendants.  *See Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985); *Dudley v. Stewart*, 724 F.2d 1493, 1494 (11th Cir. 1984).

To the extent Plaintiff seeks an injunction on behalf of other unnamed inmates currently incarcerated in the Fountain or J.O. Davis facilities, his claim also fails. Plaintiff's attempt to procure injunctive relief on behalf of unnamed inmates is an impermissible attempt to assert third party rights in federal court. The standing doctrine frowns upon attempts to assert rights for others outside the context of a class action lawsuit. Generally, "a litigant must assert his own legal rights and interests and may not ordinarily rely on the rights and interests of third parties." *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir.), *cert. denied*, 513 U.S. 1045, 115 S. Ct. 641, 130 L. Ed. 2d 546 (1994). "The prohibition against third-party standing promotes the fundamental purpose of the standing requirement by ensuring that the courts hear only concrete disputes between interested litigants who will frame the issues properly." *Id*. (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220-21, 94 S. Ct. 2925, 41 L. Ed. 2d 706 (1974)). Inmates presently housed at Fountain and J.O. Davis can assert their own constitutional rights should they choose to do so. *See Harris*, 20 F.3d at 1124. Accordingly, the sought injunctive and declaratory relief against Defendants is moot.

**2. Dismissal of Action for Failure to State a Claim.**

Plaintiff alleges violations of both the Eighth and Fourteenth Amendments of the United States Constitution against Defendants pursuant to 42 U.S.C. § 1983. In order "[t]o sustain a cause of action based on section 1983, [a plaintiff] must establish two elements: (1) that [he] suffered a deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States, and (2) that the act or omission causing the deprivation was committed by a person acting under color of law." *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987) (internal quotations and citation omitted).

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. Amend. VIII. To demonstrate a violation of an Eighth Amendment right in a section 1983 prison conditions action, a plaintiff must prove three elements: (1) "a condition of confinement that inflicted unnecessary pain or suffering;" (2) "the defendant's deliberate indifference to that condition;" and (3) "causation." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993), cert. denied, 510 U.S. 1164, 114 S. Ct. 1189, 127 L. Ed. 2d 539 (1994) (internal

quotation marks and citations omitted). "The wrong in Eighth Amendment cases is the deliberate indifference to a constitutionally infirm condition; that wrong must, in turn, have been the proximate cause of the plaintiffs' injuries." 995 F.2d at 1538-39.

Thus, the substantive elements of an Eighth Amendment claim are generally comprised of an objective component in the required showing of an unconstitutional "condition of confinement," as well as a subjective component in the required showing of "deliberate indifference" to that condition. It is only when both objective and subjective components are satisfied that a violation of the Eighth Amendment may be found. *See*, *e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

The Due Process Clause protects against deprivations of "life, liberty, or property, without due process of law." U.S. CONST. Amend. XIV. The Supreme Court has recognized two types of constitutional protection provided by this clause: procedural due process and substantive due process. *See McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994). "The substantive due process clause is rarely implicated by governmental action." *Shultz v. Wells*, 2010 U.S. Dist. LEXIS 26984, 2010 WL 1141452, *5 (M.D. Ala.

2010). "Officials acting under the color of state law violate the substantive component of the Due Process Clause only when their conduct 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Peterson v. Baker*, 504 F.3d 1331, 1336 (11th Cir. 2007), quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). "Procedural due process rules, on the other hand, protect an individual from the unjustified deprivation of life, liberty, or property." *Walker v. Sun Trust Bank of Thomasville, Ga.*, 363 Fed. Appx. 11, 17 (11th Cir. 2010) (unpublished), citing *Carey v. Piphus*, 435 U.S. 247, 259, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978).

With this legal framework in mind, the Court now turns to its analysis of Plaintiff's Complaint.

### a. Count One:

Plaintiff asserts in Count One that he was endangered when an armed inmate was allowed into Plaintiff's dormitory on June 2, 2014, stabbed another inmate, and the assailant was not quickly apprehended following the attack. (Doc. 6 at 11-12). Plaintiff claims this incident "plac[ed] the plaintiff; other inmates, and employees at Fountain in a substantial risk of harm to his present, and future health, safety." (*Id*. at 11). He further claims the Defendants

are "creating a continuous risk of harm to the plaintiff's safety, and health by 'Double' stacking the bunks at their facilities – And preventing the proper visibility needed to provide reasonable safety in the event of another inmate-on-inmate stabbing." (*Id*. at 12).

The attack of another inmate, which occurred in Plaintiff's dormitory, is not sufficient to afford Plaintiff proper standing to sue for violence caused by alleged overcrowding at Fountain. The Supreme Court has held that the plaintiff must have first suffered an injury in fact – "[t]he complaint must allege an injury to [plaintiff] that is 'distinct and palpable,' as opposed to merely '[a]bstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (internal citations omitted). Second, the plaintiff must establish a causal connection between the injury suffered and the conduct complained of. *Simon v. Eastern Ky. Welfare Rights Org*., 426 U.S. 26, 41-42 (1976). Third, it must be "likely," not merely "speculative," that the injury will be redressed by a favorable decision." *Id*. at 38, 43. And, Plaintiff carries the burden of establishing these elements. *See Lujan v. Nat. Wildlife Fed'n*, 497 U.S. 871, 883-889 (1990).

In this action, Plaintiff has failed to allege any injury with regard to Count One, or any of his claims.  He has, therefore, failed to establish that there is any causal connection between the alleged overcrowding at Fountain or J.O. Davis and any "injury in fact" suffered by Plaintiff.  Moreover, crowding of a prison does not, standing alone, create a constitutional violation.  *See e.g. Brown v. Plata*, 131 S. Ct. 1910, 1959, 179 L. Ed. 2d 969, 2011 WL 193607, * 41 (May 23, 2011) (Alito, dissenting) ("The Eighth Amendment imposes an important — but limited—restraint on state authority in this field [and] the current population level [in a prison] is not itself unconstitutional."), citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981) (The Eighth Amendment prohibits prison officials from depriving inmates of 'the minimal civilized measure of life's necessities" and no such deprivation based on "double-celling" the inmates was established.).  Consequently, Plaintiff cannot prevail on his claim of overcrowding at Fountain or J.O. Davis.

In addition to pleading an actual injury, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm" in order to state a viable claim against Defendants for a violation of the

Eighth Amendment.  *Farmer, supra*, 511 U.S. at 834; s*ee also*

*Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115

L. Ed. 2d 271 (1991) ("The Constitution . . . does not

mandate comfortable prisons, and only those deprivations

denying 'the minimal civilized measure of life's

necessities', are sufficiently grave to form the basis of

an Eighth Amendment violation" and required the inmate to

show deliberate indifference on part of prison officials.);

*Rhodes*, 452 U.S. at 347-48 (The district court's conclusion

that "double celling [] constitutes cruel and unusual

punishment" was held to be "insupportable" because it was

predicated on "considerations [which] fall far short in

themselves or proving cruel and unusual punishment, for

there is no evidence that double celling under these

circumstances either inflicts unnecessary or wanton pain or

is grossly disproportionate to the severity of crimes

warranting imprisonment.").[5]  Plaintiff, however, details a

_____

[5]     The Supreme Court in *Rhodes* analyzed the evidence
presented in that case and specifically observed, in
pertinent part:

> The double celling made necessary by the
> unanticipated increase in prison population did
> not lead to deprivations of essential food,
> medical care, or sanitation. Nor did it increase
> violence among inmates or create other
> conditions intolerable for prison confinement.
> [Citation to underlying case omitted]. Although
> job and educational opportunities diminished
> marginally as a result of double celling, limited

19

single incident of assault between two inmates in support of his claim of overcrowding. Based on the law in this area, Plaintiff has failed to set forth sufficient factual allegations in this action "to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 555. The undersigned finds Plaintiff's allegations are not sufficient to allow the Court to draw the conclusion that the alleged overcrowding "is so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). Plaintiff has, therefore, failed to state a viable constitutional claims against Defendants and Count One should be dismissed prior to service pursuant to § 1915(e)(2)(B)(ii).

**b. Count Two:**

Count Two of Plaintiff's complaint consists of four allegations of unconstitutional conditions present at Fountain and J.O. Davis. In order for Plaintiff to succeed in stating a conditions of confinement claim, he must show

---

work hours and delay before receiving education do not inflict pain, much less unnecessary and wanton pain; deprivations of this kind simply are not punishments. We would have to wrench the Eighth Amendment from its language and history to hold that delay of these desirable aids to rehabilitation violates the Constitution.
452 U.S. at 348.

that the challenged condition resulted in a deprivation of "the minimal civilized measure of life's necessities," *Rhodes*, 452 U.S. at 347, 101 S. Ct. at 2399, or of a "single human need[.]" *Wilson v. Seiter*, 501 U.S. 294, 305, 111 S. Ct. 2321, 2327, 115 L.Ed.2d 271 (1991); *see Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994). Moreover, the challenged condition must be "extreme . . . [b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (citations and quotation marks omitted); *see Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) ("If prison conditions are merely restrictive and even harsh, they are part of the penalty of that criminal offenders pay for their offenses against society."). To be extreme, the challenged prison condition must "pose[] an unreasonable risk of serious damage to the prisoner's health or safety." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).

### 1. Lack of Fire Safety.

Plaintiff alleges while housed at J.O. Davis, Defendants

> subjected plaintiff to . . . Fire Safety hazards
> by failing to equip J.O. Davis Correctional
> Facility with the required fire sprinkler
> systems; Alarm/Smoke detector systems; operable
> fire exits signs, and doors; other fire
> apparatus, to ensure plaintiff's safety, and
> protection in the event of an actual fire and/or
> hazard.

(Doc. 6 at 14). Prisoners have a right to be free from an unreasonable risk of injury or death by fire. *Leeds v. Watson*, 630 F.2d 674, 675-76 (9th Cir. 1980). The failure to provide adequate safety equipment places inmates in constant danger of losing their lives if a fire were to occur in the prison. While the state must provide reasonable fire safety measures, "[n]ot every deviation from ideally safe conditions constitutes a violation of the Constitution," *Santana v. Collazo*, 714 F.2d 1172, 1183 (1st Cir. 1983), *cert. denied*, 466 U.S. 974, 80 L. Ed. 2d 825, 104 S. Ct. 2352 (1984),[6] including state law violations.

---

[6] Courts must analyze how the complained of conditions deny "the minimal civilized measure of life's necessities. *Hadix v. Johnson*, 367 F.3d 513, 528-529 (6th Cir. 2004); *see generally Women Prisoners of the Dist. of Columbia Dep't of Corr.*, 877 F. Supp. 634, 669 (D.D.C. 1994) (finding that the combination of living conditions presented a risk of fire so serious that it violated contemporary standards of decency where: (1) the dormitories were overcrowded and carried a heavy combustible load; (2) the walls could not contain a fire within any room; (3) only one fire exit consistently remained unlocked; (4) there was no fire alarm system; (5) there was no sprinkler system; and (6) fire drills were not

Essential to stating a $ 1983 claim is that the complained of conduct must deprive a plaintiff of rights, privileges or immunities secured by the Constitution or federal laws. *West v. Atkins*, 487 U.S. 42, 48 (1988). And while a violation of a state law or regulation, as

---

regularly conducted); *Toussaint v. McCarthy*, 597 F. Supp. 1388, 1410 (N.D. Cal. 1984) (finding an Eighth Amendment violation where (1) lockup units at both prisons were replete with fire hazards; (2) evacuation procedures were nonexistent or, at best, untested; and (3) the record showed that multiple fire-related fatalities occurred); *Capps v. Atiyeh*, 559 F. Supp. 894, 915 (D. Or. 1983) (finding an Eighth Amendment violation due to the totality of existing circumstances: (1) the prison was a very old structure unlike solid concrete complexes approved by Ruiz; (2) the inmates, many of whom are older, lived in crowded dormitories; (3) the facility needed either smoke detectors or a fire alarm system, and an emergency exit on the north end of the building; (4) the south emergency exit was locked and only one guard could unlock it; and (5) the ladder did not reach the ground); *Masonoff v. DuBois*, 899 F. Supp. 782, 798-99 (D. Mass. 1995) (finding that there is a triable issue concerning the plaintiffs' fire hazard claim where (1) it was undisputed that the prison lacked automatic locks on the cell doors and a functioning sprinkler system and (2) that the state building code applicable to the prison required a sprinkler system and encouraged the use of automatic door locks, but (3) where the prison may have mitigated any danger to withstand constitutional scrutiny when it implemented rigorous fire safety procedures, including evacuation drills, fire drills and inspections of fire safety equipment); *French v. Owens*, 777 F.2d 1250, 1257 (7th Cir. 1986) (observing that "the eighth amendment does not constitutionalize the Indiana Fire Code. Nor does it require complete compliance with the numerous OSHA regulations" and remanding to the district court to order only those remedies that are necessary to bring conditions above constitutional minima); *Ruiz v. Estelle*, 679 F.2d 1115, 1152-53 (5th Cir. 1982) (The United States Constitution does not guarantee an inmate the right to participate in fire drills).

Plaintiff claims, may amount to a violation of the Constitution, not every state law violation will meet such standard, *Smith v. Georgia*, 684 F.2d 729 n.6 (11th Cir. 1982), as in the case at hand, Plaintiff's allegations of state fire law regulations do not rise to the level of a constitutional violation as plead.

The undersigned recognizes the importance and safety of adequate fire precautions in the prison setting, but Plaintiff fails to articulate or plead with specificity the safeguards lacking.  For instance, does the facility lack fire sprinklers and smoke detectors entirely, or is there a scarce number of sprinklers and smoke detectors, or are the installed sprinklers and smoke detectors broken?  Likewise, the complaint does not describe the deficiencies in the fire exit signs and doors; it merely claims they are inoperable.  Plaintiff fails to state if there are working fire extinguishers available or the quantity of fire exits in existence.  The complaint further lacks details of whether or not there is a fire escape plan.  These imprecise allegations construct a conclusory claim that will not suffice to support a § 1983 claim.  *See Hadix*, 367 F.3d at 529 (noting the need to show "the point at which certain fire safety deficiencies ceased being mere

deficiencies and, instead, became constitutional violations"). Plaintiff's laundry list of wrongs does not carry his burden of proving the necessary objective component of his claim; therefore, the undersigned is incapable of determining if the allegations are deficiencies or constitutional violations.

Thus, since the Court lacks sufficient specifics regarding the alleged fire safety hazards, Plaintiff has suffered no injury, and Plaintiff is no longer housed at J.O. Davis (thereby eliminating the threat of harm to him due to any potential fire), the undersigned finds Plaintiff's allegations are insufficient to state a cause of action and recommends that this claim be dismissed prior to service pursuant to § 1915(e)(2)(B)(ii).

## 2. **Unsanitary Shower Conditions.**

Plaintiff's allegations concerning the overall cleanliness and structural integrity of the showers are not sufficiently serious to satisfy the objective component of the Eighth Amendment test. Plaintiff does not allege that he suffered, or imminently will suffer, any injury as a result of the conditions. *See, e.g., Shrader v. White*, 761 F.2d 975, 983-84 (4th Cir. 1985) (holding that prisoners'

allegations including leaking ceilings and a shower area covered in rust, mold, and mildew were constitutionally insignificant); *Flaherty v. Cunningham*, No. 93-216, 1994 U.S. Dist. LEXIS 12908, 1994 WL 485751, at *2 (D.N.H. Sept. 2, 1994) (dismissing inmates' Eighth Amendment claims regarding poor air quality and absence of fresh fruit, where inmates did not aver sufficient facts demonstrating present or potential future harm).  Plaintiff's claims are not extreme as his challenged prison condition does not "pose[] an unreasonable risk of serious damage to the prisoner's health or safety." *Richardson*, 598 F.3d at 737. Therefore, the undersigned recommends that this claim be dismissed prior to service pursuant to § 1915(e)(2)(B)(ii).

### 3. Inadequate Cleaning Products for Sanitation.

Plaintiff contends that inmates have been denied adequate cleaning supplies to aid in the prevention of contracting communicable disease, specifically the human immunodeficiency virus ("HIV").  This allegation is supported by Plaintiff's assertion that the cafeteria lacks hot water necessary for properly sanitizing eating utensils and that the prisons use diluted detergents to clean the showers, sinks, toilets, and laundry area shared by both HIV positive and HIV negative inmates.

This allegation is frivolous as it completely lacks an arguable basis of fact.  The HIV virus is transmitted by certain body fluids from an HIV infected person, *i.e.*, blood, semen, rectal fluids, vaginal fluids, and breast milk.  *See* AIDS.gov, http://www.aids.gov/hiv-aids-basics/hiv-aids-101/how-you-get-hiv-aids/index.html (last visited Oct. 9, 2014).  In order to become infected,

> [t]hese body fluids must come into contact with a mucous membrane or damaged tissue or be directly injected into [one's] bloodstream (by a needle or syringe) for transmission to possibly occur. Mucous membranes are the soft, moist areas just inside the openings to [the] body. They can be found inside the rectum, the vagina or the opening of the penis, and the mouth.

*Id.*

> HIV is NOT spread by:
>
> - Air or water
> - Insects, including mosquitos . . .
> - Saliva, tears, or sweat
> - Casual contact, like shaking hands, hugging or sharing dishes/drinking glasses
> - Drinking fountains
> - Toilet seats

*Id.*  Taking Plaintiff's claim of Fountain and J.O. Davis possessing deficient cleaning supplies as true, his claim remains insufficient to sustain a constitutional § 1983 action, as weak cleaning supplies do not lead to one being

infected with HIV.   Thus pursuant to § 1915(e)(2)(B)(i),

Plaintiff's claims should be dismissed as frivolous.

### 4. General Maintenance.

Similarly, Plaintiff's allegations concerning exposed

electrical wiring from damaged lighting fixtures and

chipping paint and rust on his bed frame fail to warrant

relief.  While allegations such as these may state a valid

constitutional claim under certain circumstances,

Plaintiff's allegations do not.[7]  Plaintiff fails to show

---

[7]    *Huff v. Pundt*, No. 2:11-cv-148, 2012 U.S. Dist. LEXIS
101079, 2012 WL 2994839 at *8 (S.D. Tex. June 29, 2012)
(concluding that a shower adjacent to exposed wires and
rusted light fixtures poses a substantial risk of
electrocution); *Patterson v. Kistousky*, No. 07C 5731, 2010
U.S. Dist. LEXIS 138300, 2010 WL 5490653 at *3 (N.D. Ill.
Dec. 30, 2010)(finding that multiple shocks caused by
faulty wiring in shower over a two month period where the
frequency and extent of those shocks were in dispute
potentially raised a colorable Eighth Amendment claim).  On
the other hand, absent any physical harm, potential
electrical hazards do not necessarily rise to the level of
a constitutional violation. *Van Nort v. Dickinson*, No. CIV.
S-09-1566 (KJM), 2010 U.S. Dist. LEXIS 9509, 2010 WL 308715
at *2 (E.D. Cal. Jan. 12, 2010), citing *Morissette v.
Peters*, 45 F.3d 1119, 1123 (7th Cir. 1995) (dismissing
plaintiff's allegations that wires and electrical outlets
abutting the steel frame of his bed posed a substantial
risk of serious harm absent allegations that the outlets
were overloaded or that the wiring was frayed or in poor
condition); *Robinson v. Detella*, No. 95 C 4067, 1996 U.S.
Dist. LEXIS 10440, 1996 WL 422154 at *3-*4 (N.D. Ill. July
24, 1996) (holding that plaintiff failed to state an Eighth
Amendment claim because he was not required to spend any
time in basement where the alleged electrical system had
exposed wires and dripping water).

what harm, if any, he has suffered as a result of the alleged wrongdoings of Defendants. *See, e.g., Oliver v. Powell*, 250 F. Supp. 2d 593, 604 (E.D. Va. 2002) (holding that allegations that cell contained roaches, leaky toilets, peeling paint, and writing on the wall did not state a claim under the Eighth Amendment). Nor can Plaintiff imminently suffer any injury as a result of the conditions because he is no longer incarcerated at that facility. Additionally, Plaintiff failed to establish the needed subjected element of his claim, that Defendants knew that the peeling paint from his bed frame contained lead or that Defendants knew of the exposed electrical wiring and disregarded an excessive risk to his safety. *Farmer*, 511 U.S. at 837.

Plaintiff states Defendants have refused to "repair [the] safety covering over the wiring hanging out of damaged, ill-repaired lights" in the living area. (Doc. 6 at 16). This complained of condition is located in one area or room of the prison, not throughout the prison, and Plaintiff never submits that a single defendant, much less Defendants Stewart, Smith, Raybon, Bentley, Thomas, Lynn, and Paulk ever had personal knowledge of the exposed electrical wiring. This allegation fails to meet the

plausibility standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 680-83 (2009). While the Court holds *pro se* litigants to a less stringent standard, he fails to allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" sufficient to sustain a finding of deliberate indifference on any named defendant. *Twombly v. Bell Atlantic Corp.*, 550 U.S. 544, 556 (2007). Plaintiff's allegations are insufficient to state a claim warranting relief. Thus, the undersigned recommends that Plaintiff's claims regarding the general maintenance under which he has been confined be dismissed for failure to state a claim pursuant to § 1915(e)(2)(B)(ii).

### c.    Count Three:    Retaliatory Transfers.

It is well established that inmates are protected by the First Amendment from retaliation by prison officials for filing lawsuits or administrative grievances. *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986); *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). "To state a first amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989). Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free

speech," *id.*, with a practice that is "not reasonably related to legitimate penological objectives" or take certain actions "with the intent of chilling that First Amendment right." *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995), citing *Turner v. Safley*, 482 U.S. 78, 85-89 (1987).

"To state a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action." *Flynn v. Scott*, 2006 WL 1236718, *5 (M.D. Ala. 2006) (citing *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600-01 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003)).

> An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that prison officials retaliated against the inmate. . . . Merely alleging the ultimate fact of retaliation, however, is insufficient. . . . Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to demonstration of a retaliation claim. . . . If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated

> against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. . . . Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court by sufficient evidence that the proffered reason for the adverse decision is a pretext for retaliation.

*Flynn*, 2006 WL 1236718 at 5-6 (citations omitted). A prisoner "must allege facts showing that the allegedly retaliatory conduct would not have occurred but for the retaliatory motive." *Hempstead v. Carter*, 2006 WL 2092383, *5-6 (N.D. Fla. 2006) (emphasis added) (citing *Jackson v. Fair*, 846 F.2d 811, 820 (1st Cir. 1988)). "[A] causal connection may be alleged by a chronology of events that create a plausible inference of retaliation. *Id*. (citing *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988)). However, "[t]he relevant showing . . . must be more than the prisoner's 'personal belief that he is the victim of retaliation.'" *Id*. (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)). The prisoner must present with more than "general attacks" upon a defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that plaintiff had carried his burden of proving the requisite motive. *Crawford-El v.*

*Britton*, 523 U.S. 574, 600 (1998) (citations omitted).
While a plaintiff may not be held to a heightened burden of
proof, *see id.* at 580-86 (holding that in retaliation claim
prisoner could not be required to show "clear and
convincing" evidence of defendant's unconstitutional
motives), courts should approach prisoner claims of
retaliation "with skepticism and particular care" due to
the "near inevitability" that prisoners will take exception
with the decisions of prison officials and "the ease with
which claims of retaliation may be fabricated." *Dawes v.
Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled in
part on other grounds by Swierkiewicz v. Sorema N.A.*, 534
U.S. 506 (2002).

The allegations contained in the complaint describe
Plaintiff's transfer from Bullock to Fountain and then to
J.O. Davis as retaliatory transfers because they were
conducted without Plaintiff's request, without his
signature, and without a required Alabama Department of
Correction's form.  (Doc. 6 at 18).  Additionally,
Plaintiff contends the denial of his transfer to Decatur
Honor Camp was also a retaliatory action in violation of
his constitutional rights.  Plaintiff challenges the
Central Review Board's finding and maintains the prior
approval of the J.O. Davis Warden and Classification

Specialist, as well as the prior placement of his codefendant into the Honor Camp, evidences that Defendants conspired against him to deny his transfer to the Honor Camp solely for in retaliation for previous lawsuits filed.

After a thorough review of the record, the Court finds that Plaintiff's allegation of a retaliatory transfer is not evidenced by the record but is instead a mere conclusory claim unsupported by the chronology of events. Plaintiff filed a § 1983 action in the M.D. of Alabama on May 7, 2013 against the wardens of Bullock, (13-cv-0311-WHA-WC; Doc. 1), and the defendants answered the suit and filed special reports on September 30, 2013. A motion to show cause why Plaintiff was being denied meaningful access to the courts was filed, and defendants answered on October 4, 2013, and the motion was denied on October 8, 2013. (*See* 13-cv-0311-WHA-WC filed in the M.D. Alabama; Docs. 27, 28). The dates of interest related to the filed civil action do not correspond with subsequent transfer dates to suggest retaliation as a motive. The record shows, Plaintiff was not transferred to Fountain and J.O. Davis until April 2014 and June 12, 2014, respectively. (Doc. 6 at 14, 18). This current § 1983 action was filed on June 15, 2014, and Plaintiff's transfer to the Honor Camp was approved by prison officials on June 20, 2014, but denied

by state officials on July 9 and 11, 2014. (*Id*. at 23). Thus, the record reflects Plaintiff's transfer from Bullock occurred nearly a year after his lawsuit was filed against Bullock officials and three quarters of a year after Bullock officials answered the suit and responded to Plaintiff's motion to show cause. There appears to be no link in the timeline of Plaintiff's protected constitutional right to file suit against prison officials and his transfer to a less desirable prison than the one for which he had hoped. Therefore, Plaintiff has failed to show a causal connection to establish the necessary third prong of stating a retaliation claim.

Furthermore, the undersigned finds the record sufficiently explains the central review board's position and its reasoning in denying Plaintiff's transfer to the Honor Camp. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (Courts must give "substantial deference to the professional judgment of prison administrators" who are in a better position to understand the volatile prison environment and act to prevent disorder.). Finding no indication of or support for Plaintiff's allegation of a retaliatory transfer, it is recommended that Count Three be dismissed prior to service for failure to state a claim pursuant to § 1915(e)(2)(B)(ii).

**d. Count Four: Access to the Courts.**

Plaintiff claims he was denied access to the courts while incarcerated at Fountain and J.O. Davis.  Plaintiff makes no specific allegations pertaining to Fountain, but claims J.O. Davis lacked a physical law library, fails to provide legal materials, forms, and updates to the law. Additionally, Plaintiff alleges Defendants Stewart, Smith, Raybon, and Giles conspired to intentionally deprive him of him of access to the courts, including impeding him from filing additional lawsuits and from completing "Special Reports" in the suit that was pending in the M.D. Alabama at the time of transfer.

As to the allegation of conspiracy, Plaintiff fails to state a claim.  To state a § 1983 claim for conspiracy to violate constitutional rights, Plaintiff must establish a conspiracy existed that resulted in the actual denial of a constitutional right.  *GJR Invs., Inc., Cnty. of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998).  Moreover, Plaintiff must prove the defendants "reached an understanding" to violate his constitutional rights. *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he linchpin for conspiracy is agreement."). While factual proof of the existence of a § 1983 conspiracy may be based on circumstantial evidence, *Burrell v. Bd. of*

*Trs. of Ga. Military Coll.*, 970 F.2d 785, 789 (11th Cir. 1992). Plaintiff fails to produce any evidence that all Defendants conspired with one another to transfer Plaintiff for the purpose of impeding his pending lawsuit or preventing the filing of future suits. As previously stated, the record reflects a timeline that produces no indication of a retaliatory transfer, much less a conspiracy to retaliate against Plaintiff. The transfers occurred months after Plaintiff's case was filed and months after pivotal pleadings and motions had been submitted and responded to, by both parties. Plaintiff's conclusory allegation of Defendants' conspiracy is not sufficient to state a valid claim; therefor, Plaintiff has failed to show the essential elements needed to state a claim for conspiracy under § 1983. Thus, it is recommended that his claim be dismiss for failure to state a claim pursuant to § 1915(e)(2)(B)(ii).

Turning to the substantive aspects of an access-to-courts claim, in *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court ruled that an inmate must show that he has suffered an injury in order to have standing to bring a claim for denial of access to courts in a § 1983 action. *Id*. at 349. To establish this injury the inmate must show that he has been frustrated or

impeded in the prosecution of his conviction's direct appeal, habeas petition, or civil rights action implicating a basic constitutional right and that this underlying action was nonfrivolous. *Id*. at 353-54. The underlying "claim must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury*, 536 U.S. 403, 416, 122 S. Ct. 2179, 2187, 153 L. Ed. 2d 413 (2002). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355, 116 S. Ct. at 2182.

In the present action, Plaintiff asserts he desired access to a law library to research and litigate his civil rights action filed against the wardens at Bullock in 2013. But, Plaintiff must satisfy the test laid out in *Lewis*, and Plaintiff does not. Plaintiff fails to allege an injury to his litigation in the M.D. of Alabama, and the Court can find none after reviewing the docket and pleadings in that case. According to the docket sheet in the M.D. of Alabama, after the denial of Plaintiff's motion to show cause, no substantive action has taken place in the case

since October 8, 2013. Thus, approximately a year has past with the only filings being motions for extensions of time, including extension requests filed by Plaintiff. Furthermore, Plaintiff was able to file the action currently before the Court on June 15, 2014, as well as a motion for leave to proceed *in forma pauperis* (doc. 2), two motions to amend (docs. 4, 8), and an amended complaint (doc. 6) while incarcerated at J.O. Davis. Therefore, the Court is unable to identify how Plaintiff has been injured or will be injured, nor is an injury identified by Plaintiff. Plaintiff has, therefore, failed to establish that he has suffered a harm or will suffer a harm of the type described in *Lewis v. Casey*, *supra*, so as to have standing to bring an access-to-courts claim. Accordingly, Plaintiff has failed to state a claim for the denial of access to the courts, and it is recommended that Count Four be dismissed prior to service for failure to state a claim pursuant to § 1915(e)(2)(B)(ii).

## IV. Conclusion.

Based upon the foregoing reasons, the undersigned recommends that this action, in its entirety, be DISMISSED prior to service pursuant to 28 U.S.C. § 1915(e)(2)(B).

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden, Attorney Gen., State of Ala.,* 715 F.3d 1295, 1300 (11th Cir. 2011). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 9th day of October 2014.

s/BERT W. MILLING, Jr.
UNITED STATES MAGISTRATE JUDGE